IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WM ORGANIC GROWTH, INC. | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-10-0996 |
| | § | |
| A-HARMONY, LLC AND | § | |
| THOMAS HARMON, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a contract dispute involving recycling technology that the plaintiff, WM Organic Growth, Inc., paid the defendants, A-Harmony, LLC and Thomas Harmon, to develop. WM filed this suit in Texas state court, alleging that the defendants pocketed approximately $300,000 that WM had given them to pay vendor invoices, requiring WM to pay a second time to satisfy the vendors' claims. WM also alleged that the defendants breached an agreement to treat WM as a joint owner of the recycling technology. The defendants removed the basis of the federal courts' jurisdiction over patent cases. WM has moved to remand, arguing that no issue arises under the patent laws because inventorship need not be decided to resolve the claims. (Docket Entry No. 6). The defendants have responded, (Docket Entry No. 9), and WM has replied, (Docket Entry No. 10). The defendants have also filed a supplemental reply. (Docket Entry No. 13). Based on the motion, response, and replies; the pleadings; the record; and the applicable law, this court grants WM's motion to remand and denies the motion for attorney's fees. The reasons are explained below.

**I.     Background**

On October 15, 2007, WM, A-Harmony, and Harmon entered into a contract to develop technology for recycling asphalt shingles. The Shingle Recycling Project Agreement referred to A-Harmony and Harmon together as "Finder." The Agreement stated as follows:

>    A.     Project Background: Recitals
>
>    1.     Finder has identified a specific business opportunity, referred to as the "Shingle Recycling Project," which will be based on unique technical designs, configurations and processes for a shingle recycling unit (the "Project").
>
>    2.     Due to the uncertain nature of the shingle recycling technology and business case for such Project, the parties believe that in order for them to arrive at an objective decision to pursue the Project, it is necessary for Phase 1 technology/project due diligence, as presented by Finder and agreed to by WMOG ("Phase 1 Diligence"), to be conducted prior to pursuing the negotiation or finalization of any definitive arrangement relative to the Project. Such Phase I Diligence shall include, without limitation, the engineering and design of a prototype shingle recycling unit (the "Pilot Unit"), and recycled asphalt product testing and marketing.
>
>    B.     Project Scope: Agreement
>
>    1.     Pending the review and approval of the Phase I Diligence procedures by WMOG, WMOG agrees to fund and pay for the engineering and design costs and expenses of the Pilot Unit (the "Phase I Design Costs"). Upon WMOG approval of the Phase I Design Costs, Finder shall incur, and invoice WMOG for, and WMOG shall pay, the Phase I Design Costs not to exceed $20,000 in accordance with the terms and provisions of this Agreement.
>
>    2.     In consideration for WMOG's payment of the Phase I Design Costs, Finder will deliver to WMOG the Pilot Unit engineering and design plans and all other related documentation, in an agreeable format, covering or satisfying the design deliverables that are mutually satisfactory. Finder shall deliver the Phase I Diligence results to WMOG by

    October 31, 2007 unless this date is extended by mutual agreement.

3. Except as agree[d] to in writing, both WMOG and Finder shall treat the existence, scope and results of the Phase I Diligence and the Project [as] confidential during that period of time beginning with the date of this Agreement and ending September 30, 2008 (the "Exclusivity Period").

4. Based on the results of the Phase I Diligence, WMOG will make a decision on whether it desires to proceed with additional phases of the Project, including the construction and testing of the Pilot Unit and subsequent test units, and if commercially viable, production units.

5. If WMOG decides to construct the Pilot Unit, Finder will build the Pilot Unit for WMOG at the cost of equipment, materials and installation, plus 25% margin. The 25% margin shall cover all of Finder's and its employees' time, labor and overhead costs, and profit.

6. It is understood that *each party owns the rights to the information and technologies (including any patents or know-how) jointly developed* during the design, construction, and startup of the Pilot Unit (the "Technology.").

7. If at anytime after the Exclusivity Period and for a three (3) year period thereafter, either WMOG or Finder decides to not jointly pursue the further design, testing or construction of shingle recycling units using the Technology (a "Unit"), each party agrees to pay the other party a fee equal to five percent (5%) of the costs paid by it to a third party to construct and (if any) install a Unit, or if such party constructs and/or installs the Unit itself, its direct materials and labor cost (excluding overhead or SG&A) for the construction and/or installation of a Unit, provided that the fee shall not exceed $100,000 per Unit (the "Joint Development Fee"). Other than the obligation to pay the Joint Development Fee, each party shall have the full and unencumbered right to use or exploit the Technology without the consent of other party.

3

      C.    <u>Miscellaneous</u>

1. Neither this Announcement nor any interest herein or any claim hereunder, shall be assigned by either party without the express written consent of the other party, which consent shall not be unreasonably withheld.

2. This Agreement shall be governed by the laws of the State of Texas without reference to the conflicts of laws of any jurisdiction. All disputes, differences, or questions arising out of or relating to this Agreement or the validity, interpretation, breach, violation, or termination thereof shall be brought or initiated in state or federal court in Harris County, Texas, and each party consents to and submits itself to the personal jurisdiction of any such court with respect to any such matter arising under or relating to the Agreement.

3. This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof. This Agreement, including this Section, may be amended or modified only by an instrument in writing signed by both of the parties hereto or their authorized representatives.

(Docket Entry No. 6, Ex. 1 (emphasis added)).

On June 12, 2009, WM filed a lawsuit in Texas state court against A-Harmony and Harmon. WM alleged that it fully performed its contractual obligations. As contemplated in the Agreement, the Pilot Unit was designed and the Phase I Diligence was completed. WM then exercised its right to pay the defendants to construct the Pilot Unit. WM alleged that it paid the defendants for equipment, materials, and installations, as well as the 25% margin fee, totaling $2.6 million. (Docket Entry No. 1, Ex. 3, ¶¶ 10, 11).

According to WM, the defendants breached the Agreement in four respects. First, WM alleged that, on March 9, 2009, the defendants submitted a patent application naming Harmon as the sole inventor. WM's attorneys had prepared a draft application listing both Harmon and Kirk Frey, a WM employee, as inventors. The defendants crossed out Frey's name before submitting the

application, violating the Agreement to treat WM as a joint owner of the technology. (*Id.*, ¶ 12). Second, and relatedly, WM alleged that the defendants have refused to recognize WM as a joint owner and that Harmon has held himself out to third parties as the sole inventor and owner of the technology. WM specifically stated, however, that it "does not seek to litigate the inventorship issues in this litigation, but only ownership issues under the parties' Agreement." (*Id.*, ¶ 13 & n.1). Third, WM alleged that the defendants continued to perform work and bill WM even after the Pilot Unit was complete and WM had sent the defendants a notice to stop work. (*Id.*, ¶ 14). Finally, WM alleged that the defendants failed to pay vendors with the money WM provided under the Agreement specifically to pay vendor invoices. WM alleged that these vendors have now turned to WM to pay invoiced amounts of $280,684.45. (*Id.*, ¶ 15).

WM's original state court petition sought relief for breach of contract and unjust enrichment and a declaratory judgment that WM "is an owner of the Technology and related patents" and "is entitled to an assignment of an equal undivided interest in any patent rights arising out of the Technology pursuant to the agreement." (*Id.*, ¶¶ 18-25). In their answer, the defendants asserted counterclaims against WM and its outside patent counsel for making fraudulent representations to the United States Patent and Trademark Office ("PTO") and breaching the Agreement by including Frey's name on the patent application as a coinventor. The defendants also counterclaimed for a declaratory judgment that they were the sole owners of the shingle recycling system and related patents. (Docket Entry No. 6, Ex. D). The parties engaged in discovery through the remainder of 2009 and into early 2010. The patent attorneys were dismissed from the suit before removal.

On February 25, 2010, WM nonsuited its declaratory judgment claims and moved for partial summary judgment on the breach of contract claim. The motion was based on an order from the state court deeming the defendants' failure to respond to requests for admission to be an admission that they had breached the Agreement and owed WM $325,290.64. The defendants responded to the summary judgment motion on March 19 and WM replied on March 25. A hearing was scheduled for March 26. The day before the hearing, the defendants filed a notice of removal in this court. (Docket Entry No. 1). The notice asserted that WM's breach of contract claims require proving that Frey is an "inventor" of the recycling technology. The defendants asserted that they discovered this in two recent documents: (1) a patent application published by the PTO on March 18, 2010 listing Harmon and Frey as inventors; and (2) a document WM filed with the state court on February 25, 2010 objecting to the defendants' request to enter WM property to inspect the Pilot Unit. (*Id.* at 1-3). The defendants also filed a separate action in this district, No. 4:10-cv-0994, seeking a declaratory judgment that Frey is not a joint inventor.[1]

WM has moved to remand. (Docket Entry No. 6). WM argues that there is no federal question jurisdiction because none of the remaining claims in the lawsuit involves issues of patent law but only whether the defendants fulfilled their contractual obligations or were unjustly enriched. WM also argues that removal was untimely because the defendants knew the asserted basis when WM filed the original state court petition. Finally, WM argues that the defendants waived the right to remove by participating in the state court litigation. (*Id.*). The defendants have responded. (Docket Entry No. 9). They argue now that they first learned of the basis for removal when WM

---

[1] The defendants have moved to consolidate this case with the other federal court action, (Docket Entry No. 4), WM has responded, (Docket Entry No. 7), and the defendants have replied, (Docket Entry No. 8). Because the motion to remand is granted, the motion to consolidate is denied as moot. WM's motion to strike the defendants' reply to the motion to consolidate, (Docket Entry No. 12), is also denied as moot.

6

filed a motion for *partial* summary judgment in state court, which suggested to the defendants after "some reflection" that WM would later move for judgment on the nonsuited declaratory judgment claim, which would implicate patent law. (*Id.* at 14 n.6). The defendants also argue that to establish that they had breached the Agreement by naming Harmon as sole inventor in the patent application, WM would have to "establish that Kirk Frey is a joint inventor under the patent laws." (*Id.* at 9). WM has replied. (Docket Entry No. 10). The defendants have filed a supplemental reply. (Docket Entry No. 13).

The remand motion is analyzed below.

## II.   The Applicable Law

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed. 28 U.S.C. § 1441. The removing party bears the burden of establishing that a state court suit is removable to federal court. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 n.25 (5th Cir. 2000); *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *see also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) ("[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."). Doubts about the propriety of removal are to be resolved in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).

District courts have original jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a). But "the mere presence of a patent issue cannot of itself create a cause of action arising under the patent laws." *Consol. World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987). Under the well-pleaded complaint rule, the plaintiff is generally entitled to remain in state

7

court if the complaint does not affirmatively allege a federal claim on its face. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). A claim that does not specifically plead a claim under the patent laws arises under those laws only if they are "'a necessary element of one of the well-pleaded claims.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809, 108 S. Ct. 2166 (1988) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S. Ct. 2841 (1983) (alterations removed)). "If 'on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks,' then the claim does not 'arise under' those laws." *Id.* at 810 (internal citation omitted) (quoting *Franchise Tax Bd.*, 463 U.S. at 26 & n.29, 103 S. Ct. 2841 (alterations added by *Christianson* Court)).

**III.   Analysis**

WM argues that remand is appropriate because the relief it seeks does not depend on patent law. WM has nonsuited the declaratory judgment claim.[2] The relief WM seeks is the following:

- specific performance of the Agreement "granting WM ownership of the Technology and assigning to WM an equal undivided [ownership] interest in any patent rights arising out of the Technology;" and one of the following:

- damages for breach of contract; or, in the alternative

- restitution of the defendants' unjust enrichment.

(Docket Entry No. 6, Ex. B at 8).

---

[2] WM states that it "is only seeking to recover the money it is owed" under the contract. (Docket Entry No. 10 at 3 n.2). WM appears to argue that the only issue in the case is the defendants' failure to pay vendors with the money WM provided. In its reply to the state court summary judgment motion, however, WM stated that if the court *granted* the motion "in its entirety, this case would be concluded as Plaintiff would immediately non-suit its remaining claim." (Docket Entry No. 6, Ex. E at 4 n.2). The other breach of contract theories appear to remain in this case. The declaratory judgment issues, however, do not.

The defendants argue that determining whether WM is entitled to such relief "necessarily and essentially requires a determination of inventorship under the patent laws." (Docket Entry No. 9 at 10).³ This argument is unpersuasive. The breach of contract claim and the relief sought do not require any determination of inventorship. Whether the defendants performed work in violation of the Agreement or failed to pay vendors are contractual issues. Nothing on the face of the complaint (or elsewhere in the record) links the payment or work obligations to which party is properly credited as inventor of the recycling technology.

The alleged contractual obligation to grant WM ownership rights, including an interest in the patent rights, does not require a determination of inventorship. One need not be the inventor of a technology to be an owner of patent rights to that technology. The recent Federal Circuit decision cited by the defendants, *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Industrial Co., Ltd.*, 600 F.3d 1347 (2010), states this rule clearly. In that case, the plaintiffs alleged that the defendants had stolen a drug treatment the plaintiffs had invented. Both parties had filed patent applications, which were pending during the litigation. The plaintiffs sued for a declaratory judgment that they had invented the drug and asserted a number of supplemental state-law claims. The court held that the declaratory judgment claim arose under the patent laws, as did a state-law claim for slander of title because an essential element of that claim was that the plaintiffs obtained title to the drug by inventing it. *Id.* at 1352-55. None of the remaining claims arose under the patent laws. The claim for breach of implied contract (there was no express contract) "could be resolved by reference to the defendants' alleged failure to keep their promises not to misappropriate or commercialize the [drug]." *Id.* at 1356.

---

³ In the notice of removal, the defendants also asserted that diversity of citizenship "bolstered" its case for removal under § 1338(a). They did not raise this issue in their response to the remand motion. There is no basis for diversity jurisdiction because, at the time this action was filed, Texas was the principal place of business of both WM and A-Harmony.

Determining the owner of the technology did not implicate patent law "because that implied contract could dictate which party owns the [drug]." *Id.* at 1356-57. Determining ownership did not require determining inventorship.

Deciding whether the defendants' alleged failure to recognize WM as a joint owner of the recycling technology violated the Agreement does not require deciding the inventor of the technology. *See id.* at 1356 ("the ownership dispute could be resolved without a determination of who invented the [drug]."). The breach of contract issues depend on the meaning of the parties' Agreement, which is an issue of state contract law. *See Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S. Ct. 1096 (1979) ("State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable."); *Collin County v. Siemens Bus. Servs., Inc.*, 250 F.App'x 45, 49 (5th Cir. 2007) (unpublished) (holding that claims for fraud, negligent misrepresentation, and breach of contract did not arise under the patent laws even though a contract between the plaintiff and one of the defendants agreement gave the defendants patent rights because "[t]he possibility of some ancillary patent-related issue does not confer jurisdiction.").

The issue of the defendants's failure to list Frey as an inventor on the patent application has been pleaded as a contractual issue. The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425 (1987). WM did not allege that the defendants violated patent law by leaving Frey off the application because he was an "inventor." WM alleged that the defendants breached their *contractual obligations to WM*—presumably the clause stating that "each party owns the rights"—by claiming sole credit on the application. Whether this claim has merit depends on the meaning of the Agreement.

10

None of WM's claims depend on the patent laws. This court does not have federal removal jurisdiction under § 1338(a) and § 1441.[4]

## IV.  Attorneys' Fees

28 U.S.C. § 1447(c) authorizes a court to "require payment of just costs and any actual expenses, including attorney fees incurred as a result of removal." The Supreme Court has clarified that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where

---

[4]  Even if the issues asserted in this case and the relief sought did require a determination of ownership, two additional concerns would be present. First, 28 U.S.C. § 1446(b) provides a defendant with 30 days after receiving the state court petition to remove the case. If the basis for removal is not apparent from the petition, the defendant has 30 days after receiving "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case" may be removed. 28 U.S.C. § 1446(b). Leaving aside that the defendants changed their position as to which document provided the basis for removal after filing the notice of removal, the removal was untimely because the asserted basis for it would have been apparent when WM filed its original petition. The defendants argue in their motion that WM's "state court pleading . . . states a claim" that requires a determination of inventorship. (Docket Entry No. 9 at 10). Nothing has been added to the pleading since the case was filed. The defendants' claim is that they realized removal is proper because WM's motion was for *partial* summary judgment only, which meant that the inventorship issues remained in the case. They argue that the "declaratory judgment action was nonsuited, not to clarify that Waste Management was not seeking this relief, but as unnecessary because subsumed under the breach of contract claim." (*Id.* at 13). As discussed, this is not an accurate understanding of the remaining issues. But, even if it were, it should have been apparent—and, indeed, was much more plausible—when the original petition was filed, before the claim was nonsuited. Because the basis for removal should have been clear from the petition filed on June 12, 2009 and the case was not removed until March 25, 2010, removal was untimely.

Second, the defendants participated extensively in the state court litigation before removing. *See Brown v. Demco*, 792 F.2d 478, 481 (5th Cir. 1986) ("Even a defendant who petitions timely may have waived its right to removal by proceeding to defend the action in state court or otherwise invoking the processes of that court."). The defendants answered the complaint, filed counterclaims, third party claims, and amendments to those claims; served requests for production and interrogatories; moved for protection from discovery; and responded to the motion for summary judgment. This behavior demonstrated a clear intent to proceed in state court and amounted to a waiver of the right to remove. *See id.* (suggesting that waiver was appropriate where the defendants "filed answers, amended answers, motions of various kinds, third party demands, cross claims, amended cross claims, and participated in discovery and depositions."); *Garcia v. SSP Partners*, No. C-06-0385, 2006 WL 2850066, at *5-7 (S.D. Tex. Oct. 3, 2006) (finding a "'clear intent to have the state court proceed on the merits of the case'" by defendants that filed motions to compel arbitration and motions to consolidate and transfer two cases filed by the plaintiff in state court and offered to pay for an ad litem for the plaintiffs' children if the cases were consolidated (quoting *Jacko v. Thorn Americas Inc.*, 121 F.Supp.2d 574, 576 (E.D. Tex. 2000)).

11

the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).  The record before this court does not show that the defendants' arguments were so objectively unreasonable as to justify a fee award.  The motion for fees is denied.

**V.      Conclusion**

WM's motion to remand is granted.  The motion for attorney's fees is denied.

SIGNED on May 25, 2010, at Houston, Texas.

                      Lee H. Rosenthal
                United States District Judge